**EXHIBIT A**

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
01/04/2024 04:21 PM
CV 2024 01 0038

## IN THE BUTLER COUNTY COMMON PLEAS COURT
## BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| Jessica Stechenfinger | : | |
| 8445 Misty Shore Drive | : | |
| West Chester, Ohio 45069 | : | CASE NO. |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE: |
| -vs- | : | |
| | : | |
| Silverlake Financial, LLC | : | |
| c/o statutory agent | : | |
| David Potalivo | : | |
| 4835  River Ave, Unit B | : | |
| Newport Beach, CA 92663 | : | |
| | : | |
| and, | : | |
| | : | |
| David Potalivo | : | |
| 4835 River Ave, Unit B | : | |
| Newport Beach, CA 92663 | : | |
| | : | |
| and, | : | |
| | : | |
| Palisade Legal Group, PLLC | : | |
| c/o statutory agent | : | |
| Registered Agents Inc. | : | |
| 1717 N. Street, Suite 1 | : | |
| Washington, DC 20036 | : | |
| | : | |
| and, | : | |
| | : | |
| Michael Daniel Moccia | : | |
| 1200 N Federal Hwy, Ste. 200 | : | |
| Boca Raton, FL 33432 | : | |
| | : | |
| and, | : | |
| | : | |
| John Doe Debt Settlement Company, | : | |
| Name Unknown | : | |
| Address Unknown | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND

Plaintiff Jessica Stechenfinger states the following claims for relief:

### Introduction

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C, Section 1681b(f) regulates the access and use of consumer reports in order to protect consumer privacy. This case involves the illegal use of and access to private financial data in the consumer reports of likely tens of thousands of financially distressed consumers. The information was accessed for the illegal purpose of marketing debt settlement and/or consolidation services. Defendants obtained lists of consumer data, lists referred to as prescreened lists, including Plaintiff's. Defendants used the lists to market debt settlement services.

The prescreened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The prescreened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See*, *Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001).

The prescreened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The prescreened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See*, *Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001).

Accordingly, Plaintiff Jessica Stechenfinger brings this action to obtain monetary damages, injunctive relief, attorneys' fees, her costs in this action and any other relief to which she may be entitled to compensate her for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C,

§§1681, et seq., ("FCRA") the Ohio Consumer Sales Practices Act, Oh. Rev. Code §§1345.01 to 1345.99 ("OCSPA"), the Equal Credit Opportunity Act, 15 U.S.C §1691 ("ECOA"), fraud, and civil conspiracy all of which were violated as part of a venture to advertise, promote, and operate a business of soliciting clients for debt settlement and credit repair.

## Jurisdiction and Venue

1.      This Court has venue to hear this case pursuant to Ohio Civ. R. 3(B)(3), in that some of the transactions complained of, and out of which this action arose, occurred in Butler County, Ohio, where Plaintiff resides.

2.      The transactions and occurrences which gave rise to this action occurred in Butler County, Ohio.

3.      Venue is proper in the Butler County Common Pleas Court.

4.      Defendants regularly engage in business with, and direct business at, Ohio consumers and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct includes, among other things, holding themselves out as debt settlement and credit repair companies providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents; seeking participation in Defendants' debt settlement and credit repair programs; contracting in Ohio with Ohio consumers for various services including debt settlement and credit repair; offering to perform and/or performing activities for Ohio residents including debt settlement and credit repair functions.

5.      Specifically, all Defendants had actual knowledge or acted with reckless disregard as to the deceptive nature of the mailing, the illegal nature of the data used in the mailing campaign at issue, that a portion of the mailers were directed to Ohio consumers (including Exhibit A).

6.      All Defendants, acting in concert, conspired to illegally obtain protected consumer

reporting data and mail to tens of thousands of Ohioans the illegal solicitations at issue in this Complaint, or substantially similar solicitations.

7.     All Defendants intentionally targeted thousands of Ohioans at their residential addresses located in the State of Ohio and knew their conduct would injure these consumers in the State of Ohio.

8.     Each Defendant played a significant and necessary role in the conspiracy described in this Complaint.

9.     This Court has jurisdiction over the parties and the subject matter of this action.

10.    For the purposes of this Complaint, unless otherwise indicated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this caption.

11.    Defendants, acting in concert with each other, unlawfully obtained Stechenfinger's consumer report and used it to illegally obtain information for the purpose of sending deceptive solicitations for debt adjustment/debt settlement and credit repair services. Defendants have misused the illegally obtained data of Plaintiff as well as likely tens of thousands of Ohioans.

12.    As such, Plaintiff seeks damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

## Statement of Facts

13.    All named Defendants engaged in a scheme to obtain and use protected consumer reporting data to market debt settlement and credit repair services via mailers directed to Stechenfinger in the State of Ohio.

14.     To that end, Silverlake and Palisade, the individual defendants, and likely with a co-conspirator Clarity Debt Resolution Inc. ("Clarity"), acted in a joint venture to obtained a prescreened list containing the names and addresses of consumers in financial distress from TransUnion, a consumer reporting agency as defined by the Fair Credit Reporting Act.

15.     The individual Defendants—Michael D. Moccia ("Moccia") and David Potalivo ("Potalivo") knew of the conduct alleged in this Complaint, and directed Palisade and Silverlake to continue engaging in the illegal marketing scheme.

16.     Moccia is the principal and attorney Member of Palisade and he has a non-delegable duty to ensure Palisade's marketing practices, including the direct solicitations to Ohio consumers at issue in this Complaint, comply with all federal and state laws and ethical rules.

17.     Likewise, Potalivo is experienced in the industry and knew the prescreened list at issue would be used to illegally market debt settlement services. Even while knowing marketing debt settlement services was an impermissible purpose for using consumer reporting data, Potalivo directed Silverlake to engage in the illegal conspiracy described herein.

18.     Defendants obtained and used these prescreened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances or high interest rates, etc.; Stechenfinger was on at least two of these lists.

19.     These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by Defendants. While Silverlake represented in its mailer that it was offering Stechenfinger a loan, Silverlake never intended to honor this offer and was in fact marketing on behalf of Palisade and other debt settlement companies.

20.     Palisade is a debt settlement company/law firm and cannot provide loans to consumers such as Stechenfinger.

21.     Clarity is a debt settlement company/law firm and cannot provide loans to consumers such as Stechenfinger.

22.     Palisade engages in a debt settlement model that has come to be known as the "attorney model." Debt settlement companies believe that if the debt settlement is being performed by a law firm, the companies do not have to comply with various state laws designed to regulate debt settlement companies.

23.     Palisade partners with Clarity—the company that actually performs the debt settlement on behalf of the consumers enrolling in the debt settlement program marketed by Silverlake and Palisade.

24.     The lists used to market the "attorney model" debt settlement scheme constitutes consumer reports under the FCRA.

25.     Silverlake and Palisade then arranged for the preparation and mass mailing of marketing letters to the consumers on the prescreened lists obtained from the consumer reporting agency for the benefit of Clarity, itself and Palisade.

26.     Stechenfinger received five of the mailed solicitations.

27.     The mailer to which Stechenfinger responded was populated by a prescreened list obtained by Silverlake from TransUnion on March 23, 2023. Defendants' representations on the mailer, and during the debt settlement pitch in response to the mailer provides proof that all Defendants knew how the data was illegally obtained from a consumer reporting agency:

        (a)     On the front of the mailer, Silverlake provides the standard prescreen and opt out language stating: "You can choose to stop receiving 'prescreened' offers of credit from this and other companies by calling toll-free 1-888-567-8688. See **PRESCREEN & OPT-OUT NOTICE** on the other side for more information about prescreened offers."

(b)     Likewise, on the back of the mailer is the long version of the prescreen and opt-out notice, which is required to be placed in such a marketing piece when using prescreened lists or data.

(c)     The mailer states Stechenfinger is "pre-approved" and further indicates "[t]his 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria." However, in the disclosures, Silverlake conversely represents it "…does not broker loans and does not make and/or fund any product offerings, loans, or credit decisions."

28.     On or about April 6, 2023, Stechenfinger called the phone number listed on the mailed solicitation to accept the purported firm offer of credit. Silverlake, once again, under the guise of offering a loan, obtained Stechenfinger's consumer report on April 6, 2023. On that same date, a company called Credit Guard, out of Boca Raton, Florida, also accessed Stechenfinger's TransUnion consumer report.

29.     Stechenfinger spoke with Olivia Liam, ("Liam"), a representative of Silverlake, who immediately informed Stechenfinger that Silverlake could not offer her a loan and pitched a debt settlement program on behalf of Silverlake, Palisade, and likely Clarity although Clarity was not mentioned by name. These are companies that do not engage in making loans.  Liam stated that negotiations with Schenefinger's creditors would be performed by Palisade, the law firm they use in the State of Ohio.

30.     Even though Silverlake knew it had already once turned Stechenfinger down for the purported loan under the guise that she did not qualify for the loan, it sent her four additional mailers, all representing that the data used to populate the mailers originated with a consumer reporting agency.

31.     Silverlake engaged in the exact same bait and switch marketing and illegal use of protected FCRA data with thousands of Ohio consumers.

32.     The FCRA only permits a person or entity to use prescreened lists for a permissible purpose, and for no other purpose. Attempting to cross-sell a different financial product is illegal.

33.     In this case, Defendants' conduct was far worse than attempting to cross-sell as the sole marketing purpose of the mailer was to trick Stechenfinger and all other Ohio consumers into responding to the solicitation in an attempt to obtain a loan, only to then market a debt settlement program on behalf of Silverlake, Palisade, and likely Clarity and/or Credit Guard.

34.     Silverlake, Palisade and Clarity partnered to advertise a consolidation loan through a direct marketing campaign to entice Stechenfinger to call on the solicitation, but instead marketed debt adjustment or debt settlement products and services on behalf of, and for the benefit of Palisade and Clarity. This is the classic and illegal "bait and switch" method of marketing and violates the Ohio Consumer Sales Practices Act.

35.     Silverlake, Palisade and Clarity never intended to offer a loan to Stechenfinger.  The solicitation itself was a guise to obtain a targeted list from a consumer reporting agency as it is unlawful to obtain consumer reports for the purpose of marketing debt settlement services of Palisade and Clarity.

36.     Silverlake, Palisade and Clarity could not legally lend Stechenfinger money as advertised in the purported firm offer of credit as neither have lending licenses in Ohio that would permit them to do so.

37.     Silverlake also indicates within its mailed solicitation that it has no control over the participating lender's creditworthiness eligibility criteria.  However, the FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the

consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." Defendants' mailer did not meet the definition of a "firm offer of credit" in that neither Silverlake, Palisade or Clarity actually lend money or broker loans. Neither Defendant could have possibly honored the fake offer as represented in the Silverlake mailer.

38. It is unlikely that Defendants made any attempt to obtain a loan on behalf of Stechenfinger as Stechenfinger did not receive any notifications from any lenders, including but not limited to, an adverse action letter.

39. All Defendants are necessary components of this conspiracy - Silverlake obtained the prescreened lists from TransUnion and arranged for the mailing campaign, Palisade and Clarity and/or Credit Guard are the actual end user of the data for Ohio consumers on the list.

40. While Silverlake pretends to be the lender, the relationship between Clarity and Palisade a purported law firm, is the "attorney model" employed by many debt settlement companies throughout the country in hopes of avoiding state and federal laws pertaining to debt settlement companies.

41. Silverlake, knew, when it partnered with Palisade and Clarity, that the prescreened lists it obtained from consumer reporting agencies would be used to market debt settlement on behalf of and for the benefit of Palisade and Clarity, and not to make a firm offer of credit. Palisade and Clarity likewise had full knowledge of this scheme as well and were willing co-conspirators motivated at obtaining new debt settlement clients, and in turn, larger profits.

42. All Defendants knew, or should have known, that the data used in the marketing originated at a consumer reporting agency.

43. All Defendants share, in some percentage, the fees paid by Ohio consumers.

44. All Defendants knew the solicitation, as it exists and as it is described by Silverlake, was not a firm offer of credit, and that Defendants did not have the intent to honor the loan terms as offered in the mailer.

45. The entire scheme is designed to impermissibly access Stechenfinger's private consumer reporting data because all Defendants know this targeted and direct marketing is extraordinarily profitable.

46. Stechenfinger was mortified when she learned that her most private financial data had been invaded, once again, by companies working within an industry that is widely known for unscrupulous business practices, including but not limited to, taking money from consumers without performing the promised services.

47. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

48. Plaintiff did not authorize Defendants to access her consumer report information prior to the mailer being sent to her.

49. Defendants are responsible for any of the actions of its agents under the doctrine of *respondeat superior.*

**COUNT ONE**
**Violation of the Fair Credit Reporting Act**
**Willful Noncompliance, 15 U.S.C. § 1681n**

50. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

51. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

52. Defendants, alone or through a marketing agent, obtained information and data on Plaintiff's credit worthiness, credit standing, credit capacity, character, general reputation,

personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §1681a(f).

53. The marketing agent then disclosed Plaintiff's most private consumer reporting data to Defendants in order to use it in Defendants' marketing campaign.

54. All Defendants illegally accessed Plaintiff's consumer report for the purposes of marketing a debt settlement program, and all Defendants knew Stechenfinger, and any reasonable person, would be harmed by this invasion of privacy.

55. The information is therefore a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

56. Defendants willfully obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n.

57. Defendants willfully obtained and used Plaintiff's consumer reports to utilize the information for marketing debt settlement services. Under section 607 of the Fair Credit Reporting Act, it is clearly stated that the purpose for which a consumer report is sought must be certified, and that it must be further certified that the information will be used for no other purpose 15 U.S.C. § 1681e.

58. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

59. Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of her privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages and embarrassment upon learning that her most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

**COUNT TWO**
**Violation of the Fair Credit Reporting Act**
**Negligent Noncompliance, 15 U.S.C. § 1681o**

60.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

61.     Defendants negligently obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

62.     The information obtained is a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

63.     Defendants negligently obtained and used Plaintiff's consumer report without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

64.     Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of her privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning that her most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

**COUNT THREE**
**Violation of the Fair Credit Reporting Act**
**False Pretenses--15 U.S.C. § 1681q**

65.     Plaintiff repeats, realleges, and incorporates by reference, as though set forth herein, the prior paragraphs of this Complaint.

66.     Defendants accessed Plaintiff's consumer reports under false pretenses.

67.     Defendants violated the FCRA by knowingly and willfully procuring information on Plaintiff under false pretenses, 15 U.S.C. § 1681q.

68.     15 U.S.C. § 1681q has a private cause of action under 15 U.S.C. § 1681n.

69.     All Defendants acted knowingly and willfully. Defendants' willful conduct is illustrated by the following:

(a)     The FCRA was enacted in 1970; Defendants have had over 50 years to become compliant;

(b)     Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

(c)     All Defendants knew that they had no intention of, making a firm offer of credit. Similarly, the individual Defendants knew the consumers responding to the mailers had no business relationship with Defendants, were not being offered a credit transaction, but instead were being offered debt settlement services.

(d)     Defendants systematically procured consumer information without permissible purposes despite myriad statutory text and guidance.

(e)     By adopting such a policy and practice, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

70.     Plaintiff is entitled to Statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff is also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff is further entitled to recover her costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR
## Violations of the Ohio Consumer Sales Practices Act

71.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

72.     The interactions between Plaintiff and Defendants were a "consumer transaction" as defined by R.C. § 1345.01(A) as Defendants solicited a service to Plaintiff, an individual, for

purposes that are primarily personal, family or household. Defendants did this by mailing Plaintiff a solicitation to procure their business. The purpose of the mailed solicitation was personal in nature and Defendants solicited Plaintiff to provide her services for her personal debt in exchange for various fees.

73.    The mailers sent to Plaintiff as well as the ensuing telephone sales pitch for debt settlement services were riddled with deceptive and fraudulent representations.

74.    Defendants are "suppliers" as defined by R.C. § 1345.01(C) as it engaged Plaintiff in the soliciting of a consumer transaction by attempting to procure Plaintiff's business by sending her mailed solicitations in an attempt to provide Plaintiff with debt adjustment/debt settlement services in exchange for various fees.

75.    Plaintiff is a "consumer" as defined by R.C. § 1345.01(D) as she engaged in consumer transactions with Defendants, a supplier. Defendants solicited Plaintiff via the mailer attached as Exhibit A to this Complaint and invited her to call.

76.    All parties are a "person" as defined by R.C. §1345.01. A person includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity. Plaintiff is a person and Defendants, a legal entity, is also a person.

77.    Defendants committed material unfair, deceptive, and/or unconscionable acts and practices in connection with a consumer transaction, primarily for personal, family or household purposes, in violation of the Ohio Consumer Sales Practices Act, including, but not limited to:

(a)    Making false or misleading statements to induce a purchaser to pay for services in violation of R.C. § 1345.02(A).

(b)     Knowing of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

(c)     Using a sales presentation which makes the material facts of the offer misleading or conveys or permits an erroneous impression as to the services offered for sale.

(d)     Defendants violated O.A.C. 109:4-3-03(B)(2) and engaged in deceptive acts or practices in connection with a consumer transaction because the first contact it had with Stechenfinger was secured by through deception when Defendants sent a misleading letter to Plaintiff.

(e)     Defendants violated O.A.C. 109:4-3-10(A) and engaged in deceptive acts or practices in connection with a consumer transaction because Defendants made representations, claims, or assertions of fact about the status of Plaintiff's debt balances, monthly payments, interest rates and high balance revolving debt in an effort to convince a reasonable consumer to call immediately and retain Defendants' services.

78.     Plaintiff was in fact deceived by the alleged violations and as a result of the preceding violations by Defendants, Plaintiff has suffered injury in the form of mental and emotional hardship, physical, mental and emotional stress, anxiety, embarrassment and monetary damages caused by the deceptions in the mailers previously described in this Complaint.

## COUNT FIVE
### Fraud

79.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

80.     Fraudulent conduct has been specifically alleged throughout this Complaint and incorporated into Count Five by reference. Plaintiff specifically relied on the aforementioned representations, misrepresentations, non-disclosures and implied representations when making the

determination whether to contact Silverlake and provide Silverlake and its coconspirator(s) with access to her consumer reports and other private financial data.

81.     The Defendants' entire scheme is to mislead. It misled the consumer reporting agency by obtaining protected FCRA data under false pretense, and it misled Stechenfinger by tricking her into calling and disclosing additional data under the false pretense of offering a consolidation loan.

82.     Specifically, Stechenfinger relied on all representations in Exhibit A in deciding to call Silverlake. These representations include, but are not limited to, the fact that she was invited to apply for a consolidation loan, when, in fact, Defendants were only interested in marketing debt settlement services.

83.     The Defendants' representations concerning the work it claimed it would perform were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

84.     The representations were made with the intent of misleading Plaintiff into relying upon them so Defendants could obtain money from Plaintiff, as well as access to her consumer report.

85.     Plaintiff was justified in relying upon the Defendants' representations. Plaintiff has been injured by the wrongful and fraudulent conduct of Defendants and has been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## COUNT SIX
## Civil Conspiracy

86.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

87.     Silverlake conspired with Palisade and Clarity to illegally obtain, and use data protected by the FCRA. The Defendants committed further crimes when they conspired to use the illegal

data in a deceptive fashion. All Defendants knew the marketing scheme was both criminally and civilly illegal and they were joint actors and conspirators in the illegal marketing scheme.

88.     The combined acts of Defendants have resulted in damages to Plaintiff in the form of an invasion of privacy and the emotional damages resulting from such an invasion.

89.     The combination of Defendants' actions and conduct as alleged herein constitute a civil conspiracy by way of an unlawful act independent of the conspiracy, namely fraud and the criminally illegal acts in violation of both the FCRA and the OCSPA resulting in an invasion of privacy.

## COUNT SEVEN
## Violations of the Equal Credit Opportunity Act

90.     While Plaintiff does not believe Defendants intended to offer a loan, should Defendants demonstrate they did make a firm offer of credit that was then denied for permissible reasons as outlined in the FCRA, then it violated the Equal Credit Opportunity Act.

91.     Defendants are a "creditor" as defined in 15 U.S.C. § 1691a(e) as it extended credit to Stechenfinger via mail; Defendants regularly extend credit and make credit decisions, including rejecting customer credit applications.

92.     Stechenfinger is an "applicant" as defined in 15 U.S.C. § 1691a(e) as she applied directly to Silverlake and Palisade via telephone following the pre-approved offer that arrived in the mail.

93.     Silverlake and/or its partners Palisade and Clarity failed to issue an adverse action notice following the denial of credit to Stechenfinger within 30 days of the denial as stated in Reg. B 12 C.F.R.§ 202.9(a)(1)(i).

94.     The foregoing acts and omissions of Defendants constitute a violation of the ECOA.

95.     As a result of Defendants' violation of 15 U.S.C §1691 *et seq.*, Stechenfinger is entitled to an award of up to $10,000.00 in punitive damages for each violation pursuant to 15 U.S.C §1691.

96.     Stechenfinger is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## **Prayer for Relief**

ACCORDINGLY, Mrs. Stechenfinger requests this Court grant any or all of the following relief:

   a.   Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

   b.   Statutory damages in an amount to be determined at trial.

   c.   Punitive damages in an amount to be determined at trial.

   d.   Costs and attorney fees as provided by statute.

   e.   Declaratory and injunctive relief as appropriate.

   f.   Any other relief the Court deems just.

                         Respectfully submitted:


                         */s/ Jeremiah E. Heck*
                         Jeremiah E. Heck (0076742)
                         David B. Schultz (0077281)
                         Gregory S. Zuchowski (0098449)
                         Luftman, Heck & Associates, L.L.P.
                         6253 Riverside Drive, Suite 200
                         Dublin, Ohio  43017
                         Phone: (614) 224-1500
                         Fax: (614) 224-2894
                         jheck@lawLH.com
                         *Attorneys for Plaintiff*

                         */s/ Brian M. Garvine*
                         Brian M. Garvine  (0068422)
                         LAW OFFICE OF BRIAN M. GARVINE, LLC
                         5 East Long Street, Suite 1100
                         Columbus, Ohio 43215
                         Tel: (614) 223-0290; Fax: (614) 221-3201
                         Email: brian@garvinelaw.com
                         *Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Jessica Stechenfinger, demands trial by jury in this action.


/s/ Jeremiah E. Heck
Jeremiah E. Heck (0076742)

EXHIBIT A



**Company Information:** SilverLake Financial does not broker loans and does not make and/or fund any product offerings, loans, or credit decisions. Credit approval is not guaranteed and is dependent upon underwriting guidelines. Consumers must meet existing underwriting guidelines and prior loan approval does not guarantee loan approval on this offer. See our website or call us for complete disclosure of APR, fees and payment terms. Limited documentation required and restrictions apply SilverLake Financial 930 W 17th Street, Suite D; Santa Ana, CA 92706. Please visit our website www.silverlakefunding.com

### PRESCREEN & OPT-OUT NOTICE:

This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria. If you do not want to receive prescreened offers of credit from this or any other companies, call the consumer reporting agencies toll-free 1-888-567-8688 or visit the website at www.optoutprescreen.com; or write to the following consumer reporting agencies: TransUnion Opt-Out Request P.O. Box 505, Woodlyn, PA 19094-0505. Equifax Options, P.O. Box 740123 Atlanta, GA 30374-0123. Experian Information Systems, Inc P.O. Box 919 Allen, TX 75013



FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
01/04/2024 04:21 PM
CV 2024 01 0038

## IN THE BUTLER COUNTY COMMON PLEAS COURT
## CIVIL DIVISION

Jessica Stechenfinger,                    :
                                          :
                    Plaintiff,            :        **Case No.**
                                          :
        v.                                :
                                          :
Silverlake Financial, LLC, *et al.*       :
                                          :        **JUDGE**
                    Defendants.           :

---

### PRAECIPE FOR SERVICE

TO THE CLERK OF COURTS, YOU ARE INSTRUCTED TO MAKE:

CERTIFIED MAIL SERVICE __X__          ORDINARY MAIL SERVICE ____

OF THE FOLLOWING DOCUMENTS:    ____SUMMONS AND COMPLAINT_____

UPON:

**DEFENDANT #1:**

Silverlake Financial, LLC
c/o statutory agent
David Potalivo
4835 River Ave, Unit B
Newport Beach, CA 92663

**DEFENDANT #2:**

David Potalivo
4835 River Ave, Unit B
Newport Beach, CA 92663

**DEFENDANT #3:**

Palisade Legal Group, PLLC
c/o statutory agent
Registered Agents Inc.
1717 N. Street, Suite 1
Washington, DC 20036

**DEFENDANT #4:**

Michael Daniel Moccia
1200 N Federal Hwy, Ste. 200
Boca Raton, FL 33432

**DEFENDANT#5:**

John Doe Debt Settlement Company,
Name Unknown
Address Unknown

Respectfully Submitted,

**LUFTMAN, HECK & ASSOCIATES, LLP**

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)
David B. Schultz (0077281)
Gregory S. Zuchowski (0098449)
Luftman, Heck & Associates, L.L.P.
6253 Riverside Drive, Suite 200
Dublin, Ohio  43017
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
*Attorneys for Plaintiff*

*/s/ Brian M. Garvine*
Brian M. Garvine  (0068422)
LAW OFFICE OF BRIAN M. GARVINE, LLC
5 East Long Street, Suite 1100
Columbus, Ohio 43215
Tel: (614) 223-0290; Fax: (614) 221-3201
Email: brian@garvinelaw.com
*Attorney for Plaintiff*