## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JESSICA STECHENFINGER, | : | Case No. 1:24-cv-47 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| SILVERLAKE FINANCIAL, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia's Motion to Dismiss (Doc. 8) and Motion for Protective Order (Doc. 17). Plaintiff filed responses to both motions. (*See* Docs. 12, 18.) Defendants then filed a Reply in Support of their Motion to Dismiss (Doc. 13), but failed to timely file a Reply in Support of their Motion for Protective Order (Doc. 17). *See* S.D. Ohio Civ. R. 7.2(a)(2). Thus, this matter is ripe for the Court's review.

For the reasons below, Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia's Motion to Dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART** and their Motion for Protective Order (Doc. 17) is **DENIED**.

## ALLEGED FACTS

### I.    The Parties

Defendant Palisade Legal Group, PLLC works alongside Clarity Debt Recovery,

Inc. as debt settlement companies/law firms. (Compl., Doc. 4, ¶¶ 20-21, 23.) Clarity performs the debt settlement, while Palisade negotiates with creditors. (*Id.* at ¶¶ 23, 29.) Defendant Michael Moccia is the "principal and attorney member" of Palisade. (*Id.* at ¶ 16.) At some point, Palisade and Clarity began working with Defendant Silverlake Financial, LLC. (*See id.* at ¶ 14.) Defendant David Potalivo is involved with Silverlake, and is experienced in the debt settlement industry. (*Id.* at ¶ 17.) Silverlake and Potalivo are both located in California, Palisade is located in Washington, D.C., and Moccia is located in Florida. (*Id.* at Pg. ID 49.)

## II. The Scheme

Palisade and Clarity partnered with Silverlake to obtain prescreened lists containing the names and addresses of consumers in financial distress from TransUnion, a consumer reporting agency. (Compl., Doc. 4, ¶ 14.) These lists allowed the parties to identify individuals with minimum debt balances or those dealing with high interest rates. (*Id.* at ¶ 18.) Silverlake and Palisade then created mass marketing letters (the "Mailers") to be sent to individuals selected from this list. (*Id.* at ¶¶ 19, 25.) Moccia and Potalivo directed Palisade and Silverlake throughout this scheme, and knew of the use of the reports obtained from TransUnion. (*Id.* at ¶ 15.)

The Mailers, which indicated that they were sent by Silverlake, represented that the recipient of the letter was being offered a loan. (Compl., Doc. 4, ¶ 19; Mailer, Doc. 4, Pg. ID 68.) The Mailers stated that the individual was "pre-selected for a flexible personal loan" and that "[t]his 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria." (Compl., Doc. 4, ¶ 27; Mailer, Doc. 4, Pg.

ID 68.) The Mailers also noted that Silverlake "does not broker loans and does not make and/or fund any product offerings, loans, or credit decisions" and indicated that Silverlake had no control over the participating lender's creditworthiness eligibility criteria. (Compl., Doc. 4, ¶¶ 27, 37; Mailer, Doc. 4, Pg. ID 68-69.) These Mailers were sent to "tens of thousands" of Ohio residents. (Compl., Doc. 4, ¶ 6.)

One Ohioan in particular, Plaintiff Jessica Stechenfinger, received five Mailers. (Compl., Doc. 4, ¶¶ 26, 30.) On April 6, 2023, Plaintiff called the phone number listed on the Mailers to accept the offer of credit. (*Id.* at ¶ 28.) During the call, a Silverlake representative spoke with Plaintiff and informed her that Silverlake could not actually offer her a loan. (*Id.* at ¶ 29.) Instead, the representative pitched a debt settlement program on behalf of Silverlake, Palisade, and "likely Clarity." (*Id.*) It became clear that Silverlake never intended to honor the loan offer identified in the Mailer. (*Id.* at ¶ 19.) Plaintiff ended the call "mortified" knowing that "her most private financial data had been invaded." (*Id.* at ¶ 46.) Afterward, Plaintiff "did not receive any notification from any lenders, including . . . an adverse action letter." (*Id.* at ¶ 38.)

## PROCEDURAL POSTURE

On February 1, 2024, Plaintiff brought the present suit against Silverlake, Potalivo, Palisade, Moccia, and John Doe Debt Settlement Company. (*See* Compl., Doc. 4.) Plaintiff brings claims for (1) violation of the Fair Credit Reporting Act ("FCRA") for willful noncompliance under 15 U.S.C. § 1681n and 1681o, (2) violation of the FCRA for false pretenses under 15 U.S.C. § 1681a, (3) violation of the Ohio Consumer Sales Practices Act ("OCSPA"), (4) fraud, (5) civil conspiracy, and (6) violation of the Equal Credit

Opportunity Act ("ECOA"). (*Id.* at ¶¶ 50-96.)

On March 1, 2024, Defendants Silverlake, Potalivo, Palisade, and Moccia ("Moving Defendants") moved to dismiss the claims against them. (Motion to Dismiss, Doc. 8.) And, on July 23, 2024, Moving Defendants moved for a protective order to stay discovery. (Motion for Protective Order, Doc. 17.)

## LAW & ANALYSIS

### I. Motion to Dismiss

The Court will first consider Moving Defendants' Motion to Dismiss (Doc. 8). Moving Defendants argue that this Court lacks personal jurisdiction over them. (*See* Motion to Dismiss, Doc. 8, Pg. ID 81-87.) Alternatively, Moving Defendants argue that Plaintiff has failed to state a claim against them. (*Id.* at Pg. ID 87-93.) The Court will first consider whether it has jurisdiction over Moving Defendants.

### a. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal if a court lacks personal jurisdiction over a defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quotation omitted). When, as here, the Court decides the motion on written submissions, it must consider the pleadings and affidavits "in a light most favorable to the plaintiff" and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). In this context, Plaintiff need only make a prima facie showing that personal jurisdiction exists—a "relatively slight" burden. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th

4

Cir. 2016); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

Personal jurisdiction may be either general or specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction "extends to any and all claims brought against a defendant who is essentially at home in the [s]tate." *Id.* A defendant is at home in a state when it is his "place of domicile" or, for a corporation, its "place of incorporation and principal place of business." *Id.* at 358-59. In contrast, specific jurisdiction requires that the lawsuit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 359. As Moving Defendants do not reside or have their principal places of business in Ohio (*see* Compl., Doc. 4, Pg. ID 49), Plaintiff must show that this Court has specific jurisdiction over Moving Defendants.

"When sitting in diversity, a federal court may exercise [specific] personal jurisdiction only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (citation omitted). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). The Court will first consider whether jurisdiction is proper under Ohio's long-arm statute.

### i. Long-Arm Statute

Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A), lists nine situations in which Ohio courts may exercise personal jurisdiction over an out-of-state defendant. Plaintiff argues that Moving Defendants are subject to specific personal jurisdiction under subsections (A)(2), (A)(4), and (A)(6) of Ohio's long-arm statute. (Response to

Motion to Dismiss, Doc. 12, Pg. ID 103-05.) The relevant portions of the statute state as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .
>
> (2) Contracting to supply services or goods in this state; . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

*Id.* § 2307.382(A)(2), (A)(4), (A)(6). The Court need only consider subsection (A)(6) to determine that Ohio's long-arm statute confers jurisdiction over Moving Defendants.

This Court has discussed the Sixth Circuit's application of subsection (A)(6) in similar circumstances:

> As the Sixth Circuit has observed, § 2307.382(A)(6) has been given a "broad approach to its application." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). In *Schneider*, the Court determined that § 2307.382(A)(6) applied to defendant, Utah attorney Thomas Nelson, where Nelson drafted a letter for a company operating a ponzi scheme. Nelson alleged that he did not participate in mailing the letter and that he did not know that the letter would be sent to an Ohio resident. The Appeals Court determined that "it defies logic that Nelson participated in this transmission but remained ignorant of the investors' geographic locations. If true, the only possible explanation is that Nelson intentionally buried his head in the sand, and that cannot save Nelson from being subject to jurisdiction in Ohio." *Id.* at 700-01.

*Corp. Bertec v. Sparta Software Corp.*, No. 2:19-CV-4623, 2020 U.S. Dist. LEXIS 78437, at *12

(S.D. Ohio May 4, 2020).

Plaintiff provides other relevant cases applying subsection (A)(6). (*See* Response to Motion to Dismiss, Doc. 12, Pg. ID 104-05.) For example, in *Hopper v. Credit Associates, LLC, et al.*, the defendant improperly obtained the plaintiff's credit report outside of Ohio. No. 2:20-CV-522, 2021 U.S. Dist. LEXIS 62062, at *2-3 (S.D. Ohio Mar. 31, 2021). From the information obtained, the defendant sent two letters presenting fake offers of credit to the plaintiff's residence in Ohio. *See id*. Relying on *Schneider*, the Court determined that such allegations established that the defendant purposefully injured an Ohio resident as defined under subsection (A)(6). *Id*. at *8-13.

Moving Defendants attempt to distinguish this case from *Hopper*, pointing out that the defendant in *Hopper* marketed to Ohio residents through "radio, television, and digital ads, and [sent] as many as 250,000 mailers to Ohio residents." (Reply to Motion to Dismiss, Doc. 13, Pg. ID 132.) But, when determining whether Ohio's long-arm statute applied, the *Hopper* Court solely considered the defendant's conduct towards the plaintiff. *Hopper*, 2021 U.S. Dist. LEXIS 62062, at *8-13. The *Hopper* Court noted that the defendant allegedly violated the FCRA by improperly using plaintiff's credit report information for soliciting purposes. *Id*. at *11-12. This, in turn, caused injury to the plaintiff, thus demonstrating that the defendant caused "tortious injury in [Ohio] to any person by an act outside [of Ohio] committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in [Ohio]" under subsection (A)(6). Ohio Rev. Code § 2307.382 (A)(6); *Hopper*, 2021 U.S. Dist. LEXIS 62062, at *12-13.

Plaintiff also points to *Vlach v. Yaple*, in which the plaintiff alleged that she received

three communications from the defendant in violation of federal consumer-protection statutes. 670 F. Supp. 2d 644 (N.D. Ohio 2009); (Response to Motion to Dismiss, Doc. 12, Pg. ID 104-05.) Though the defendant in *Vlach* argued that "he did not compose, review, or authorize" the communications, the court nevertheless concluded that plaintiff had made a jurisdictional showing under subsection (A)(6). *Vlach*, 670 F. Supp. at 647-48. The court reasoned that "[b]y allegedly sending 'false, deceptive, or misleading' representations . . . [the defendant] should have reasonably expected that the recipient would have been injured in [Ohio], given that the letter was addressed to an Ohio resident." *Id*. at 648.

Moving Defendants argue that *Vlach* is distinguishable because "*Vlach* was decided on the basis that the defendant claimed the offending communications were not authorized by him, which was a factual question inappropriate for resolution under Rule 12." (Reply to Motion to Dismiss, Doc. 13, Pg. ID 131.) To be sure, while the parties in *Vlach* disputed whether the defendant knew about the communications, the Court was not required to consider this "contrary factual contention" because the jurisdictional issue was determined without an evidentiary hearing. *Vlach*, 670 F. Supp. at 646 (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272-73 (6th Cir. 1998)). Accordingly, the Court ignored this disputed fact and noted that the defendant may present evidence on that fact at a later time. *Id*. at 650. In the same manner, as this Court is determining jurisdiction without an evidentiary hearing, it must construe the facts "in a light most favorable to the plaintiff," and cannot "weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459.

8

Moving Defendants' conduct is like those defendants in *Schneider*, *Hopper*, and *Vlach*. Silverlake sent five Mailers to Plaintiff at her Ohio residence. (Compl., Doc. 4, ¶¶ 26, 30.) Though the Mailers advertised a firm offer of credit to Plaintiff, they were instead a guise to market a debt settlement program on behalf of Silverlake, Palisade, and "likely Clarity." (*Id.* at ¶¶ 19, 27, 29.) Moccia and Potalivo knew about the improper use of Plaintiff's credit report, but nevertheless directed the Mailer scheme. (*Id.* at ¶ 15.) Though Palisade, Moccia, and Potalivo did not send the Mailers, like *Schneider*, it "defies logic" to assume that these Defendants were unaware of where those mailers would be sent. *Schneider*, 669 F.3d at 700-01. The Mailer scheme, "if proven true, could establish that [Moving Defendants] purposefully injured [Plaintiff]" in Ohio. *Hopper*, 2021 U.S. Dist. LEXIS 62062, at *13. Thus, Plaintiff has made a prima facie showing that subsection (A)(6) of Ohio's long-arm statute confers jurisdiction over Moving Defendants.

### ii. Due Process

Given that the Court may exercise personal jurisdiction over Moving Defendants under Ohio's long-arm statute, the question turns to due process considerations. "The Due Process Clause of the Fourteenth Amendment constrains a [s]tate's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotations omitted). The nonresident "generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotations omitted). Courts look to whether: (1) the defendant purposefully availed himself of the privilege of acting in the forum state, (2) the claim arose from the defendant's activities there, and (3) the defendant's actions had

a substantial enough connection to the forum state to make exercising jurisdiction reasonable. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023). The Court considers each in turn.

### 1. Purposeful Availment

"The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quotations omitted). This ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up). A defendant need not have physical contacts with the forum state, however, as long as his efforts were purposefully directed towards the forum state. *Id.* at 476. "It is the quality of [the] contacts, and not their number or status, that determines whether they amount to purposeful availment." *CompuServe*, 89 F.3d at 1265 (citation omitted).

The Court again notes the relevance of the cases cited above. In *Hopper*, the Court found that the defendant's decision to market its services to Ohio consumers, as well as the specific letters sent to the plaintiff at her Ohio residence, "were not fortuitous and nonmeaningful." *Hopper*, 2021 U.S. Dist. LEXIS 62062, at *17. Instead, "they were the choice of [the defendant] and create[d] a substantial connection with Ohio." *Id.* In *Vlach*,

10

the Court found that the defendant's three communications with the plaintiff, who resided in Ohio, "create[d] the sort of substantial connection to Ohio for which [the defendant] should reasonably anticipate being haled into court." *Vlach*, 670 F. Supp. 2d at 649. And, in *Schneider*, the Court noted that, given the defendant's "involvement in the creation of the letters [sent to Ohio] and his knowledge of their intended purpose," the fact that he did not send the letters "[did] not make [his] actions any less purposefully directed at the recipient investors." *Schneider*, 669 F.3d at 702-03.

With these cases in mind, Plaintiff has set forth specific facts to show that Moving Defendants directed their conduct towards Ohio. Moving Defendants maintain that their only connection with Ohio is that they "put an advertisement into the stream of commerce, which resulted in a single telephone conversation" of an Ohio resident. (Motion to Dismiss, Doc. 8, Pg. ID 85.) That is wrong. Silverlake allegedly sent the Mailers to "tens of thousands" of Ohio residents. (Compl., Doc. 4, ¶ 6.) Plaintiff received five of these Mailers at her Ohio residence. (*Id.* at ¶ 5.) The action of sending these Mailers into Ohio "had foreseeable effects in [Ohio] and were directed at individuals in [Ohio]." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001).

Though Palisade, Moccia, and Potalivo did not physically send the Mailers, they were nevertheless involved in the Mailer scheme. (*See* Compl., Doc. 4, ¶¶ 14, 15.) Given this involvement, the fact that they did not send the Mailers does not make their "actions any less purposefully directed at the [Ohio] recipient[s]." *Schneider*, 669 F.3d at 703. Thus, Moving Defendants purposefully availed themselves to jurisdiction in Ohio. *See Am.*

11

*Greetings Corp.*, 839 F.2d at 1170 (holding that threatening letters and phone calls to plaintiff in Ohio satisfied due process).

### 2. Arising Under

The Court next considers whether the cause of action arises from Moving Defendants' contacts with Ohio. This standard is "met when the operative facts are at least marginally related to the alleged contacts between the defendant and the forum." *Lyngaas v. Curaden Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quotation omitted). Put differently, this is a "lenient standard" that "does not require that the cause of action formally 'arise from' defendant's contacts with the forum." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007).

Plaintiff's cause of action arises from Moving Defendants' contacts with Ohio. Plaintiff alleges that Moving Defendants improperly marketed services to Ohio consumers through the Mailer solicitations in violation of state and federal law. (*See* Compl., Doc. 4, ¶¶ 14-15, 18-19, 25, 29.) Five of these Mailers were sent to Plaintiff's Ohio residence—conduct that is central to this litigation. (*Id*. at ¶¶ 26, 30.) And, as explained, though Palisade, Moccia, and Potalivo did not physically send the Mailers, they participated in the ultimate scheme and knew of the improper use of the credit reports to obtain such information. (*Id*. at ¶¶ 15, 19, 25); *see Schneider*, 669 F.3d at 703 (Though the defendant did not mail the improper solicitations sent to Ohio, his involvement in the scheme showed that his conduct arose from contacts with Ohio.). Thus, Moving Defendants' contacts with Ohio are related to the improper conduct alleged in this suit.

12

### 3. Reasonableness

Finally, the Court considers whether "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). When the preceding two conditions are met, as is the case here, it is "only the unusual case" in which the defendant presents a "compelling" reason that jurisdiction would be unreasonable. *Air Prod. & Controls*, 503 F.3d at 554 (quotation omitted); *Burger King Corp.*, 471 U.S. at 477. In making this determination, courts consider factors such as "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prod. & Controls*, 503 F.3d at 554-55.

Moving Defendants argue that exercising jurisdiction would be unreasonable because "there are no contacts even alleged by Plaintiff between Palisade, Potalivo, and Moccia." (Motion to Dismiss, Doc. 8, Pg. ID 86.) But, for the reasons already discussed, this argument is unpersuasive. Moving Defendants were all involved in the scheme to mail "tens of thousands" of improper solicitations to Ohio residents, including Plaintiff. (Compl., Doc. 4, ¶¶ 6, 14-15, 18-19, 25-30.) So, Plaintiff has a strong interest in obtaining relief in Ohio because "Ohio is the only location at which she dealt with [Moving Defendants] who solicited her business at her home in Ohio." *Hopper*, 2021 U.S. Dist. LEXIS 62062, at *23. And, Moving Defendants "purposely targeted Ohioans[,] providing

13

a strong interest for Ohio to protect its citizens from harm." *Id.* at *24. Thus, the exercise of jurisdiction over Moving Defendants is reasonable.

*   *   *

This Court has personal jurisdiction over Moving Defendants. Ohio's long-arm statute confers jurisdiction over Moving Defendants, and such jurisdiction is proper under the Due Process Clause. So, Plaintiff has made a prima facie showing that this Court possesses personal jurisdiction over Moving Defendants.

### b. Failure to State a Claim

The Court now turns to Moving Defendants' argument that Plaintiff has failed to state a claim against them. (Motion to Dismiss, Doc. 8, Pg. ID 87-93.) The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

Plaintiff brings claims against Moving Defendants for (1) violation of the FCRA,

14

(2) violation of the OCSPA, (3) fraud, (4) civil conspiracy, and (5) violation of the ECOA. (Compl., Doc. 4, ¶¶ 50-96.) Moving Defendants argue that each claim should be dismissed for failure to state a claim. (*See* Motion to Dismiss, Doc. 8, Pg. ID 88-93.) The Court will consider each in turn.

### i. FCRA Claims

To start, the Court will consider Plaintiff's FCRA claims. (*See* Compl., Doc. 4, ¶¶ 50-70.) Moving Defendants first argue that the conduct alleged in the Complaint does not demonstrate a violation of the FCRA because the unauthorized use of Plaintiff's consumer report was to offer her a firm offer of credit. (Motion to Dismiss, Doc. 8, Pg. ID 89.)

Under the FCRA, consumer reports can only be generated and used for specifically enumerated purposes. *See* 15 U.S.C. § 1681b. Relevant here, a consumer report can be generated without the consumer's authorization to make "a firm offer of credit or insurance." *Id*. § 1681b(c)(1)(B)(i). A "firm offer of credit or insurance" is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned" on three specific conditions listed in the statute. *Id*. § 1681a(l). One relevant condition is "the firm offer may be conditioned on verification that the consumer continues to meet the specific criteria used to select the consumer for the offer." *Hopper*, 2021 U.S. Dist. LEXIS 44623, at *10 (citation omitted); 15 U.S.C. § 1681a(l)(2). In essence, "an offer of credit meets the statutory definition so long as the creditor will not deny

15

credit to the consumer if the consumer meets the creditor's pre-selection criteria." *Wilson v. First Premier Bank*, No. 19-11704, 2020 U.S. Dist. LEXIS 56579, at *9 (E.D. Mich Feb. 9, 2020).

Moving Defendants maintain that they provided Plaintiff with a firm offer of credit. (Motion to Dismiss, Doc. 8, Pg. ID 89.) In support, Moving Defendants argue that Plaintiff was only denied the offer of credit portrayed in the Mailer "based upon further verification of her creditworthiness." (*Id*.) But, Moving Defendants do not cite to any allegation indicating that Plaintiff was further verified for creditworthiness. (*See id*.) Instead, Plaintiff alleges that, when she called Silverlake, she was simply informed that Silverlake could not offer her a loan. (Compl., Doc. 4, ¶ 29.) As Plaintiff was not further verified for creditworthiness before being denied the credit offer, Moving Defendants did not make a firm offer of credit to Plaintiff under the FCRA. In turn, Moving Defendants' alleged generation of Plaintiff's credit report without her authorization was done in violation of the FCRA. *See* 15 U.S.C. 1681b(c)(1)(B)(i).

Moving Defendants also argue that Plaintiff's FCRA claim fails because Palisade, Moccia, and Potalivo "had nothing to do with the Mailer that Plaintiff received." (Motion to Dismiss, Doc. 8, Pg. ID 90.) But, that is wrong. Plaintiff alleges that Moving Defendants worked together to obtain credit information from TransUnion. (Compl., Doc. 4, ¶¶ 13-14.) Each Moving Defendant knew that the information would be used to engage in illegal conduct. (*Id*. at ¶¶ 14-17, 42, 44-45.) Silverlake and Palisade prepared the Mailers, at the direction of Potalivo and Moccia. (*Id*. at ¶¶ 15, 17, 25.) So, while Silverlake may have been the entity identified on the Mailer, all Moving Defendants participated in the ultimate

16

Mailer scheme giving rise to Plaintiff's FCRA claims. So, Plaintiff's FCRA claims may proceed against Moving Defendants.

### ii. OCSPA Claim

The Court now turns to Plaintiff's claim brought under the OCSPA, which "prohibits unfair, deceptive, and unconscionable acts or practices in connection with consumer transactions." *Luckoski v. Allstate Ins.*, 5 N.E.3d 73, 81 (Ohio Ct. App. 2013) (citing Ohio Rev. Code § 1345.02-.03). Moving Defendants maintain the Mailers were not deceptive because they "expressly stated that the offer of credit was subject to verification of creditworthiness." (Motion to Dismiss, Doc. 8, Pg. ID 90.) But, while the Mailer "indicates . . . that [Silverlake] has no control over the participating lender's creditworthiness eligibility criteria," there is nothing in the Complaint or Mailer suggesting that credit approval was subject to further verification, as Moving Defendants argue. (*See* Compl., Doc. 4, ¶ 37; Mailer, Doc. 4-1.) Moving Defendants bring no other specific argument forward for the dismissal of Plaintiff's OCSPA claim. (*See* Motion to Dismiss, Doc. 8, Pg. ID 90.) Thus, Moving Defendants have not shown that dismissal of Plaintiff's OCSPA claim is warranted.

### iii. Fraud Claim

Next, the Court considers Plaintiff's fraud claim. (*See* Compl., Doc. 4, ¶¶ 79-85.) Moving Defendants argue that Plaintiff has failed to state a claim for fraud with particularity against them. (Motion to Dismiss, Doc. 8, Pg. ID 90-91.) The elements of fraud under Ohio law are:

(1) a representation or, when there is a duty to disclose, a concealment of

fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

Pursuant to Federal Rule of Civil Procedure 9(b), a party "alleging fraud" must "state with particularity the circumstances constituting fraud." At a broad level, "Rule 9(b) requires the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotations omitted). More specifically, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). The purpose of Rule 9(b)'s particularity requirement is to provide "fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Parents and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 322 (6th Cir. 1999).

Plaintiff has pled a fraud claim against Silverlake with particularity. The misrepresentation at the center of Plaintiff's fraud claim is the content contained in the Mailer. (*See* Compl., Doc. 4, ¶¶ 82-83.) Plaintiff contends that the Mailer's offer of credit— which stated that Plaintiff was "pre-selected for a flexible personal loan"—was fraudulent. (*Id.* at ¶ 27; Mailer, Doc. 4, Pg. ID 68.) This is because the offer was never intended to be fulfilled. (Compl., Doc. 4, ¶ 19.) These Mailers were sent to Plaintiff at her residence in Ohio sometime in 2023. (*Id.* at ¶¶ 27-28.) Silverlake "provided" the Mailers

18

to Plaintiff and, as the identified entity sponsoring the Mailers, qualifies as the speaker of the statements made in the Mailers. (*Id*. at ¶¶ 27, 37; Mailer, Doc. 4, Pg. ID 68-69.) Though Silverlake advised in the Mailers that it did not broker the loan, it nevertheless was the entity to fraudulently inform Plaintiff that she was preapproved for a loan. (Compl., Doc. 4, ¶ 27; Mailer, Doc. 4, Pg. ID 68-69.) Thus, Plaintiff has pled a fraud claim against Silverlake with particularity.

That said, Plaintiff cannot attach the fraudulent statements made in the Mailers to the remaining Moving Defendants. The Mailers indicate that they were sent and sponsored by Silverlake. (Compl., Doc. 4, ¶¶ 27, 37; Mailer, Doc. 4, Pg. ID 68-69.) While Plaintiff alleges that Palisade, Moccia, and Potalivo took part in the overall Mailer scheme, she does not allege that those Defendants authored the Mailers or that they should otherwise be identified as the "speakers" of the statements in the Mailers. (*See* Compl., Doc. 4.) Thus, as Silverlake is the only identified speaker of the Mailers' misrepresentations, Plaintiff's fraud claim may only proceed against Silverlake. Plaintiff has failed to plead a fraud claim against Palisade, Moccia, and Potalivo with particularity.

### iv. Civil Conspiracy Claim

The Court now turns to Plaintiff's civil conspiracy claim against Moving Defendants. (Compl., Doc. 4, ¶¶ 86-89.) The elements of an Ohio civil conspiracy claim are: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent of the actual conspiracy. *Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 928 (S.D. Ohio 2010) (citation omitted). Moving Defendants argue that Plaintiff fails to allege any of these elements. (*See* Motion to Dismiss, Doc. 8,

Pg. ID 92.) The Court disagrees.

Plaintiff has sufficiently alleged a civil conspiracy claim against Moving Defendants. Moving Defendants allegedly collaborated in furtherance of the Mailer scheme. (*See* Compl., Doc. 4, ¶¶ 14-30.) Specifically, Silverlake and Palisade worked together to obtain credit information of individuals—without their authorization—from TransUnion. (*Id*. at ¶ 14.) Silverlake and Palisade then "arranged for the preparation and mass mailing" of the Mailers to individuals selected from that report. (*Id*. at ¶ 25.) Moccia and Potalivo directed Palisade and Silverlake in this process. (*Id*. at ¶ 15.) The Mailers stated that the recipient was "preselected for a flexible personal loan," though this offer was never intended to be honored. (*Id*. at ¶¶ 19, 27.) As discussed above, this alleged Mailer scheme violates various state and federal laws, and has caused a direct injury to Plaintiff. (*Id*. at ¶ 46.) Thus, Plaintiff has sufficiently pled the elements of a civil conspiracy claim against Moving Defendants.

### v. ECOA Claim

Lastly, the Court considers Plaintiff's ECOA claim. (Compl., Doc. 4, ¶¶ 90-96.) "The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions." *Williams v. MBNA Am. Bank., N.A.*, 538 F. Supp. 2d 1015, 1018 (E.D. Mich. 2008) (citation omitted). The ECOA "bars discrimination by creditors against any credit applicant 'with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status.'" *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 771 (6th Cir. 2005) (citing 15 U.S.C. § 1691(a)(1)).

The ECOA "was amended in 1976 to require creditors to furnish written notice of

the specific reasons why an adverse action was taken against a consumer." *MBNA Am. Bank., N.A.*, 538 F. Supp. 2d at 1018 (citing 15 U.S.C. § 1691(d)(2), (3)). "A credit denial is referred to as an 'adverse action' under the ECOA." *Id.* at 1019 (citing 15 U.S.C. § 1691(d)(6)). "A written letter informing an applicant that credit has been denied is referred to as an 'adverse action notice.'" *Id.* This notice provision "appl[i]es to all loan applicants, not only those who claim to have been denied credit due to discrimination." *Id.*; *see also Moore v. Wells Fargo Bank, N.A.*, No. 3:10-CV-94, 2011 U.S. Dist. LEXIS 14680, at *13-14 (E.D. Tenn. Feb. 14, 2011) (collecting cases).

Moving Defendants first argue that Plaintiff's ECOA claim fails because she has not alleged that she belongs to a protected class. (Motion to Dismiss, Doc. 8, Pg. ID 93.) But, Plaintiff is not asserting a discrimination claim under the ECOA. (*See* Compl., Doc. 4, ¶¶ 90-96.) Instead, Plaintiff alleges that Moving Defendants violated the ECOA by failing to provide her with notice regarding her denial. (*See id.*) As discussed, notice for why a denial of credit was taken is required under the ECOA. *See* 15 U.S.C. § 1691(d)(2), (3). This notice provision "appl[ies] to all loan applicants," not just those applicants who are members of a protected class. *MBNA Am. Bank., N.A.*, 538 F. Supp. 2d at 1018. So, Plaintiff need not be a member of a protected class to bring a claim under the ECOA's notice provision. In turn, this argument fails to show that dismissal is warranted.

Next, Moving Defendants argue that they are not creditors under the ECOA such that they could grant or deny her application. (Motion to Dismiss, Doc. 8, Pg. ID 93.) Under the ECOA, a creditor is:

    1.  any person who regularly extends, renews, or continues credit;

2.  any person who regularly arranges for the extension, renewal, or continuation of credit; or

3.  any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e). "Although the statutory language of the ECOA presents these clauses as a single, cohesive definition for 'creditor,' the clauses are treated differently by the regulations promulgated under the Act by the Consumer Financial Protection Bureau ('CFPB')." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016) (citing 15 U.S.C. § 1691b(a)) (granting the CFPB authority to promulgate regulations "to carry out the [ECOA's] purposes"). Those regulations are collectively known as "Regulation B." 12 C.F.R. § 1002.1(a).

Relevant here, "Regulation B distinguishes subsection 2 by stating that persons qualifying as 'creditors' under that clause—that is, those who merely arrange for credit by referring applicants to lenders—are considered 'creditors' solely for the purposes of the ECOA's prohibitions on discrimination and discouragement." *Tyson*, 836 F.3d at 578 (citing 12 C.F.R. § 1002.2(l)). "Under Regulation B, in other words, 'creditors' who act as mere middle-men between applicants and lenders have no affirmative obligation to provide applicants with notice stating the reasons for any adverse action." *Id.* "As a result, Regulation B limits the class of creditors who are required to provide such notices to 'person[s] who, in the ordinary course of business, regularly participate[] in a credit decision, including setting the terms of the credit'; also included are 'a creditor's assignee, transferee, or subrogee who so participates.'" *Id.* (quoting 12 C.F.R. § 1002.2(l)).

22

Silverlake is not a creditor subject to Plaintiff's ECOA claim. Plaintiff alleges that Silverlake sent the Mailer promoting the offer of credit. (Compl., Doc. 4, ¶ 27.) But, the Mailer states that Silverlake "does not broker loans and does not make and/or fund any product offerings, loans, or credit decisions." (Mailer, Doc. 4, Pg. ID 69.) So, Silverlake would be most akin to an ECOA creditor defined under subsection 2—one that merely arranges for credit by referring an applicant to a lender. *See* 15 U.S.C. § 1691a(e). But, even if Silverlake constituted a creditor under subsection 2 of the ECOA, that class of creditors is only subject to the ECOA's discrimination and discouragement provisions. *See Tyson*, 836 F.3d at 578 (citing 12 C.F.R. § 1002.2(l)). As Plaintiff is not bringing an ECOA claim under either provision, Plaintiff's ECOA claim cannot proceed against Silverlake.

The remaining Moving Defendants are also not creditors under the ECOA. To be sure, Plaintiff has not identified a creditor that extended the Mailer's credit offer. (*See* Compl., Doc. 4.) This is because the viability of Plaintiff's allegations relating to the Mailer scheme relies on the fact that there were no actual creditors involved such that the offer of credit was illegitimate. (*See id.*) In any event, Palisade, Moccia, and Potalivo cannot fit into the definition of creditors under the ECOA, as they are not alleged to regularly extend credit, arrange for such extension, or act as an assignee of a creditor. (*See* Compl., Doc. 4); 15 U.S.C. § 1961a(e). As Palisade, Moccia, and Potalivo are not creditors under the ECOA, they are not subject to the ECOA's notice requirement and Plaintiff's ECOA claim must be dismissed against them.

## II.    Motion for Protective Order

Lastly, the Court considers Moving Defendants' motion for a protective order to

stay discovery. (Motion for Protective Order, Doc. 17.) Moving Defendants request this stay pending the outcome of the Court's decision on their Motion to Dismiss (Doc. 8). (*See* Motion for Protective Order, Doc. 17.) As this Court has resolved that motion, Moving Defendant's Motion for Protective Order (Doc. 17) must be denied as moot.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia's Motion to Dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**; and

2. Plaintiff's claims for Fair Credit Reporting Act violations, Ohio Consumer Sales Practices Act violations, and civil conspiracy against Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia **SHALL PROCEED**. Plaintiff's fraud claim against Defendant Silverlake Financial, LLC **SHALL PROCEED**;

3. Plaintiff's fraud claims against Defendants David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia are **DISMISSED**. Plaintiff's claim for Equal Credit Opportunity Act violations against Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia are **DISMISSED**; and

4. Defendants Silverlake Financial, LLC, David Potalivo, Palisade Legal Group, PLLC, and Michael D. Moccia's Motion for Protective Order

24

(Doc. 17) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND